Daniel J. DUBORD

v.

Susan C. DUBORD.

Supreme Judicial Court of Maine.

Argued June 14, 1990.
Decided Aug. 30, 1990.

Elizabeth J. Scheffee (orally), Givertz, Lunt & Hambley, Portland, for plaintiff.

Peter Bickerman (orally), Lipman & Katz, Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

Defendant Susan Dubord, the former wife of plaintiff Daniel Dubord, timely appeals the divorce judgment of the Superior Court (Kennebec County, *Alexander, J.*). Susan contends, among other things, that the Superior Court erred by failing to set apart to her as non-marital property her interest in the family residence. We agree and vacate the judgment of the Superior Court.

## I.

Before their marriage, the parties acquired their first residence on North Riverside Drive in Waterville and held it in joint tenancy. The parties were married on June 26, 1982. In 1984, the parties sold the North Riverside property and used the proceeds as part of a down payment for a residence at Cherry Hill Terrace, which they again held as joint tenants. The parties separated in 1989.

Before the marriage, the parties executed a prenuptial agreement that declared certain property held by each party before marriage to be and to remain during the marriage the separate property of each party. Just before the marriage, Susan sold her interest in Maine Gas, an investment that had been set aside as her separate property in the prenuptial agreement. The Superior Court found that Susan contributed $10,000, which Susan indicated was derived from the proceeds of the sale of her Maine Gas investment, to aid in the retirement of the original second mortgage on the North Riverside residence.[1] The

---

1. The record does not clearly establish whether Susan's $10,000 contribution to the retirement of the second mortgage on the North Riverside residence was derived exclusively from the sale of her investments, or whether it was derived from her interest on those investments as well. When asked if she knew where the $10,000 amount that she contributed to the retirement of the North Riverside second mortgage came from, Susan testified "Yes, it was right after we had sold Maingas [sic], and so I paid off the

$10,000." This testimony suggests that the $10,000 amount came exclusively from the proceeds of the sale of Susan's interest in Maine Gas. However, Susan later testified that Daniel originally paid the entire amount necessary to retire the second mortgage on the North Riverside residence, and that Susan subsequently "paid him back" with the $10,000 amount by means of a *check* dated January 3, 1983. The Superior Court determined that the "[f]unds for Susan Dubord's *checking account* came from [both]

Superior Court found that the remainder of the proceeds of the Maine Gas sale was then reinvested in other securities and mutual funds, of which portions remain today that the Superior Court found to be worth approximately $150,000. The Superior Court determined that Susan also contributed "$20,000 to aid with the down payment of the Cherry Hill Terrace home" from her "non-marital investment accounts." Susan testified that the $20,000 amount that she contributed to the purchase of the Cherry Hill Terrace residence was derived entirely from the sale of her separately held investment securities rather than from interest that she earned on those investments.[2]

The Superior Court determined that the funds from Susan's investments used to purchase the Cherry Hill Terrace residence were non-marital property. Nevertheless, the Superior Court concluded that it could not "find other than that these funds [were] contributions by Susan Dubord to the marital estate," and consequently found that the Cherry Hill Terrace residence was a marital asset.

## II.

■ The Superior Court erred by not setting apart to Susan as non-marital property her contributions to the Cherry Hill residence. Sufficient competent testimony in the record supports the Superior Court's factual finding that the funds from Susan's investments used to purchase the Cherry Hill residence were non-marital property. *See Moulton v. Moulton*, 485 A.2d 976, 978 (Me.1984) (factual findings cannot be reversed unless clearly erroneous). Having found that these funds were non-marital property, the Superior Court could not properly avoid setting aside a portion of the equity in the home as non-marital property merely by labeling these funds "contributions."

19 M.R.S.A. § 722–A(2) (1981) defines "marital property" as "all property acquired by either spouse subsequent to marriage," but excludes from this definition "property acquired in exchange for property acquired prior to the marriage." 19 M.R.S.A. § 722–A(3) (1981) creates a presumption that all property acquired subsequent to the marriage is marital property, but further states that this presumption shall be "overcome by a showing that the property was acquired" "in exchange for property acquired prior to the marriage." *See also* § 722–A(2)(B).

In *Tibbetts v. Tibbetts*, 406 A.2d 70, 78 (Me.1979), we held that a wife's contribution of non-marital funds to the purchase of a residence acquired by the wife and her husband as joint tenants rendered the property non-marital to the extent that it was purchased with her non-marital funds. We stated that "where property is acquired in exchange for both marital and non-marital property, the portion attributable to each must be determined. That portion of the property must then be 'set apart' as directed by 19 M.R.S.A. § 722–A(1)." *Id.* at 75. We adopted the "source of funds" approach, "which grants to each estate, marital and non-marital, a pro tanto interest in the ratio that the payments on the purchase price made with community funds bears to the payments made with separate funds." *Id.* at 76. Once Susan established in the present case that she made the payments from her non-marital property, the statutory presumption was overcome and the presiding justice was obligated to set aside to her the non-marital portion of the equity. *West v. West*, 550 A.2d 1132, 1133 (Me.1988) (court has no discretion but to set apart non-marital property).

We are not persuaded by Daniel's counter-argument that Susan, simply by taking the Cherry Hill property as a joint tenant with her husband, evidenced a clear "donative intention" to make her contribution to

income *and* distribution of *principal* from her investments." (Emphasis added).

**2.** This testimony was unrebutted. Although Susan admitted on cross-examination that she deposited interest that she earned from her investments in the money market account from which

she made part of the $20,000 contribution to the Cherry Hill Terrace residence, she testified that no interest income accumulated in this account because she "spent what [she] earned every month."

the purchase of the Cherry Hill residence a gift to the marital estate. Daniel founds his argument upon our decision in *Carter v. Carter*, 419 A.2d 1018 (Me.1980), which we determine to be distinguishable from the present case. In *Carter*, the husband had acquired real estate in his sole name prior to marriage. During the marriage the husband conveyed this property by deed to both himself and his wife as joint tenants. At the time of the divorce, the husband argued that despite the joint deed the realty was his separate property because it was acquired in exchange for property acquired before marriage. The wife countered by arguing that her interest as a joint tenant was her separate non-marital property and was not subject to division. On these facts, we held that the documentary transaction "from one spouse to both spouses jointly evidenced an intent to make a gift to the marital estate." *Id.* at 1023. By grafting a common law presumption onto the statutory presumption, we prevented the husband in *Carter* from using the source of funds rule to defeat his own joint deed transferring property during marriage.

■ The distinguishing feature in *Carter* is the transfer of property during marriage "from one spouse to both spouses jointly." *Id.* The intent to make a donation to the marital property manifested by such a transfer is not present where, as in the present case, the spouses acquire property in joint names from a third party in exchange for a combination of marital and non-marital funds. The joint deed to the property acquired by the parties in the present case is consistent with the fact that the purchase price was derived from two separate sources. Indeed, joint ownership of property thus acquired is the only way to represent the fact that the purchase price came from both spouses. In contrast, in the *Carter* situation, the joint deed could serve no purpose other than to record a gift.

The *Carter* presumption of donative intent, which may be overridden only by clear and convincing evidence, must be strictly limited to situations where the presumed gift to the marital property is to be necessarily inferred from the factual predicate, as it was in the circumstances of the *Carter* case. Were we to apply the *Carter* presumption to the present facts, we would effectively abandon the source of funds rule and hold that the mere act of taking property in joint names results in a gift to the marital estate of any separate property used as part of the purchase price. We refuse to do so. In *Smith v. Smith*, 472 A.2d 943 (1984), we reserved the question whether the *Carter* presumption "applies only to an interspousal transfer creating a joint tenancy" in real estate. *Id.* at 947 n. 5. We now determine that it does.

The entry is:

Judgment vacated. Remanded to Superior Court with instructions to enter judgment consistent with the opinion herein.

McKUSICK, C.J., and WATHEN and CLIFFORD, JJ., concurring.

GLASSMAN, Justice, with whom Roberts, J., joins, dissenting.

I must respectfully dissent. The trial court found that the funds expended by Susan Dubord for the acquisition of the marital home "were contributions by Susan Dubord to the marital estate" and accordingly held that the residence at Cherry Hill Terrace was marital property and divided it between the parties in accordance with that determination. Susan Dubord challenges this finding by the trial court.

The law is well settled that

[a] divorce court's determination of what property is marital and what is non-marital is reviewed for clear error, and will not be disturbed if there is competent evidence in the record to support it.

*West v. West*, 550 A.2d 1132, 1133 (Me. 1988). A review of the record in this case supports the court's finding. It is undisputed that Susan Dubord had certain investments at the time of her marriage to Daniel J. Dubord, which were and remained her separate property. She maintained a separate bank account and testified, *inter alia*, that the dividends, interest and the

proceeds from the sale of any of that property were deposited in that account. It is from this checking account that Susan Dubord secured the funds for the purchase of the property. She also drew funds from this account to pay for a multiplicity of other purchases and services for herself and her two children. She had no records and offered no other evidence that would allow the trial court to determine what portion of the funds in her checking account at any time was proceeds from the sale of her separate property and what was income derived from that property in the form of interest or dividends.

It is not disputed that any interest on or dividends from her investments paid to Susan Dubord after her marriage would be income to her and marital property. The court erroneously states that the trial court "determined that the funds from Susan's investments used to purchase the Cherry Hill Terrace residence were non-marital property." What the trial court found was that those moneys were "from her non-marital investment accounts," *not* that the funds were non-marital. The presumption that all property acquired after marriage is marital property is expressly stated in 19 M.R.S.A. § 722–A(3) (1981). It was Susan Dubord's burden to overcome that presumption. *See* 19 M.R.S.A. § 722–A(2). The record would not support a finding that she had met this burden. The trial court was not compelled to find that the funds used by Susan Dubord toward the purchase of the family home were "an exchange for property acquired prior to her marriage," *see* 19 M.R.S.A. § 722–A(3), rather than marital property in the form of dividend and interest income derived from her separate property. This record does not require that either the trial court or this court determine the presence or absence of a "donative intent" on the part of Susan Dubord or the effect, if any, of the presence or absence of such intent. I would affirm the judgment of the Superior Court.