1998 ME 108

**Efthimia S. HARRIMAN**

v.

**Everett J. HARRIMAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 20, 1998.

Decided May 13, 1998.

Martin J. Foley, Wilson, Fernald & Foley, Portland, for plaintiff.

Dana E. Prescott, Potter, Prescott, Jamieson & Nelson, P.A., Saco, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

ROBERTS, Justice.

[¶ 1] Everett J. Harriman appeals from the judgment of the Superior Court (Cumberland County, *Calkins, J.*) affirming the judgment entered in the District Court (Portland, *Brodrick, J.*) in a divorce action brought by his wife, Efthimia S. Harriman. On appeal he contends that the court erred in finding that the increase in value of certain retirement funds and capital stock were marital property pursuant to 19 M.R.S.A. § 722-A (1981) (current version at 19-A M.R.S.A. § 953 (1998)). He also asserts that the court erred in its treatment of the parties' debts. We affirm the judgment.

[¶ 2] The parties were married in April 1984. In 1993 Efthimia filed a complaint for divorce on the ground of irreconcilable differences. At the trial in 1996, Everett testified about the retirement funds and capital stock that are the subject of this appeal. Those funds and the relevant values are as follows:

| | Value at time of marriage | Value in 1996 |
|---|---|---|
| Paine Webber account | $ 5,400 | $21,126 |
| First Trust account | $16,595 | $66,682 |
| Dreyfus fund | $ 2,178 | $82,985 |

[¶ 3] All three of the accounts were opened before Everett's marriage to Efthimia, and the interest and dividends are reinvested into the accounts. During the marriage, Everett did not contribute any additional funds to the Paine Webber or the First Trust accounts. He did make contributions with marital funds to the Dreyfus fund of $2,000 for each of the years 1985, 1986, and 1987. In addition, in 1987 Everett purchased additional shares in the Dreyfus fund with $28,000 he received from the Gorham International profit-sharing plan. He had been employed by Gorham International, Inc., before and during the marriage. His interest in the plan was valued at $17,003 at the time of the marriage.

[¶ 4] In 1987 Everett inherited capital stock from Madellene Davenport, having a value of approximately $13,500. He enrolled in the stock reinvestment plans offered by some of the companies whose capital stock he inherited. At trial Everett was uncertain what percentage of the increase in value of the inherited capital stock was attributable to capital appreciation and what was attributable to reinvestment of dividends.

[¶ 5] In its judgment, the court ordered an equal division of the marital property. The court included in the marital estate the increase in the value of the retirement accounts and the increase in the value of the stock inherited from Madellene Davenport. The court noted that Everett failed to delineate to its satisfaction what percentage of the increase in value of the different accounts was attributable to stock splits or market growth and what was attributable to reinvested dividends. The court further ruled that each party was responsible for their respective debts. Everett filed a motion for findings of fact pursuant to M.R.Civ.P. 52 and a motion to amend the judgment pursuant to M.R.Civ.P. 59(e). Both of the motions were denied by the trial court. Everett appealed to the Superior Court and that court affirmed the judgment of the District Court. This appeal followed.

[¶ 6] Everett argues that the court erred as a matter of law by finding that when dividends from mutual funds are reinvested without any active involvement on the part of the owner during the marriage, the increase in value is marital property. To support his contentions he relies on our decision in *Nordberg v. Nordberg*, 658 A.2d 217 (Me.1995). Efthimia counters that Everett's reliance on *Nordberg* is misplaced and that our decision in *Macdonald v. Macdonald*, 532 A.2d 1046 (Me.1987), controls the issues. We agree with her contentions.

[¶ 7] In *Macdonald* we decided that the income from nonmarital property accrued during the marriage is marital property. We quoted from the Commissioner's Comments to the 1970 version of section 307 of the Uniform Marriage and Divorce Act on which 19 M.R.S.A. § 722–A was modeled, as follows:

> The phrase "increase in value" as used in subsection [ (2)(E) ] is not intended to cover the income from property acquired prior to the marriage. Such income is marital property. Similarly, income from other nonmarital property acquired after the marriage is marital property.

*Macdonald*, 532 A.2d at 1049 (quoting HANDBOOK OF THE NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS § 307, at 204 (1970)).

[¶ 8] We also stated in *Macdonald* that "whether the increase in value or appreciation of separate property is marital or separate is governed by [the "source of funds" rule]." *Id.* (citing *Hall v. Hall*, 462 A.2d 1179 (Me.1983), and *Tibbetts v. Tibbetts*, 406 A.2d 70 (Me.1979)). We also stated that in applying the "source of funds" rule, any increase in value attributable to marital effort (a spouse's activity that enhances the property) is marital property. *Id.* at 1050. Everett contends that the court misapplied those principles by relying on his supposed "marital effort" of deciding during the marriage not to change his instructions to reinvest dividends. Whether the court erred by characterizing Everett's inaction as "marital effort" and whether the concepts from *Hall* and *Tibbetts* retain their decisional vitality,

we need not decide. *See Long v. Long*, 697 A.2d 1317 (Me.1997) (overruling *Tibbetts*). The record is clear that some part of the appreciation in value of Everett's accounts resulted from reinvestment of dividend income. Because that income was marital property, the appreciation of that portion retains its status as marital property. Moreover, Everett had the burden of proving how much of the increase in the value of the accounts remained nonmarital, *Macdonald v. Macdonald*, 532 A.2d at 1050, and the court found he had not met that burden. That finding is not clearly erroneous; therefore, the court correctly ruled that all of the appreciation was governed by the presumption of section 722–A that it was marital.

■ [¶ 9] Finally, Everett contends that the trial court erred by its allocation of what he calls "marital debts." We have in the past used the term "marital debt." In at least one case we stated expressly that marital debt is apportioned according to section 722–A. *See Arey v. Arey*, 651 A.2d 351, 354 (Me.1994). We now recognize that the use of the term can be misleading. The debt of either or both spouses defines a relationship with third parties. It is not an asset to be divided pursuant to section 722–A. Although the trial curt can and should allocate responsibility for payment of debt between the spouses, it cannot affect the relationship between the creditor and the spouse or spouses. Of course, in deciding the economic issues in a divorce case, the court must consider the amount and nature of the debts of the parties and the purpose for which they were incurred. *See* section 722–A. On the record before us, the trial court could rationally conclude that an equal division of marital property was just, despite the unequal burden of the debts retained by each spouse.

The entry is:

Judgment affirmed.